UNITED STATES DISTRICT COURT
District of Maine

| | |
|---|---|
| DANIEL RUFFIN,<br>　　　　　Plaintiff<br><br>v.<br><br>ALFRED CICHON, MICHAEL<br>KNOWLTON, and JOHN HINKLEY,<br>　　　　　Defendants | Docket No. 2:17-cv-00152-NT |

**DEFENDANT HINKLEY'S MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW**

NOW COMES Defendant Hinkley, by and through undersigned counsel, and hereby moves this honorable Court pursuant to Fed.R.Civ.P. 56 for summary judgment in his favor. Filed in connection with this motion is Defendant's Statement of Uncontested Material Facts pursuant to Local Rule 56(b).

MEMORANDUM OF LAW

I. INTRODUCTION

Plaintiff alleges in the Complaint that he was denied medical care in violation of his constitutional rights. Specifically, Plaintiff complains about the medical care he received for a wound on his right foot. Plaintiff's claims are brought against Knox County Jail Administrator John Hinkley in his official and individual capacity. The Plaintiff's claims against Hinkley in his official capacity are essentially a municipal liability claim against Knox County. *See Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658, 691 n. 55 (1978)(stating that "official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.")

1

## II.  FACTS

The undisputed facts of this case are set forth in Defendant's Statement of Material Facts (hereinafter "DSMF").  The Defendant incorporates the DSMF into this memorandum of law.  The Defendant briefly summarizes the facts here.

Daniel Ruffin was incarcerated at the Knox County Jail beginning on November 17, 2016. *DSMF ¶ 1.*  On that day he was evaluated by a nurse. *DSMF ¶ 2.*  Within two weeks he was evaluated by Physician Assistant Cichon at which time he "made necessary complaints to him at that time."  *DSMF ¶ 3.*  He had a lesion on his foot in November and early December, but the wound healed itself in December. *DSMF ¶ 4.*  He saw a nurse about his feet who recommended that he buy lotion from the commissary. *DSMF ¶¶ 5, 6.*  On January 16, 2017, he made a medical request and was seen two days later by PA Cichon who referred him to a podiatrist. *DSMF ¶¶ 7, 8.*  He was seen by the podiatrist who diagnosed him with a kind of fungus in his toenails and he was given a lotion to treat it. *DSMF ¶¶ 9, 10.*  Ruffin saw PA Cichon a third time with a complaint about his knee. *DSMF ¶ 11.*

The Defendant also refers the court to Defendant Knowlton's Motion for Summary Judgment and Statement of Material Facts which discusses additional information about medical care given to Ruffin at the Knox County Jail.

## III.  LEGAL ARGUMENT

A.   <u>Standard of Review</u>

Summary judgment should be granted when the record evidence demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(a).*  The moving party bears the burden of demonstrating the lack of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).

The record is reviewed in the light most favorable to the non-moving party, and that party must be given the benefit of reasonable inferences drawn from properly asserted facts. *See Nicolo v. Philip Morris, Inc.*, 201 F.3d 29 (1st Cir. 2000). Summary judgment should be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

B.  <u>Defendant is entitled to summary judgment on all of Plaintiff's allegations because Plaintiff has not exhausted his administrative remedies under the Prison Litigation Reform Act</u>.

Under the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *42 U.S.C. § 1997e(a)*. Exhaustion is not left to the discretion of the district court, but is mandatory. *Booth v. Churner*, 532 U.S. 731, 739-741 (2001). A prisoner must also exhaust administrative remedies "even where the relief sought – monetary damages – cannot be granted by the administrative process." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). "[E]xhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983." *Id.* Section 1997e(a) requires "proper exhaustion," which means that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court. *Id*. at 89-93. A prisoner must exhaust all levels of the prison grievance process. *See Johnson v. Thyng*, 369 Fed. Appx 144, 147-48 (1st Cir. 2010). The exhaustion requirement applies even if the prisoner is transferred to a new facility. *See Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 35 (1st Cir. 2002).

        1.      Ruffin did not exhaust his administrative remedies as required by the Knox County Jail grievance procedure.

In this case, the Knox County Jail has a grievance procedure that requires that an inmate first file a Level 1 grievance. *DSMF ¶ 21*. If an inmate is not satisfied with the response to a Level 1 grievance, the inmate may file an Administrative Grievance (Level 2) which is generally answered by Lt. Gardner. *DSMF ¶ 22*. If an inmate feels the grievance has not been addressed in compliance with standards at the Administrative Grievance level, the inmate may file an appeal, first to the Knox County Sheriff and subsequently to the State Jail Inspector for External Review. *DSMF ¶ 23*. Ruffin filed one grievance with the Knox County Sheriff dated December 6, 2016, but this grievance concerned being served pork and the use of regular commissary. *DSMF ¶ 25*. On January 31, 2017, Ruffin filed an external grievance with the Maine Department of Corrections concerning problems with the grievance procedure at the Knox County Jail. *DSMF ¶ 26*. Neither of these grievances detailed issues with medical care that are currently before the Court in this Complaint. Because Ruffin failed to exhaust all levels of the jail's grievance process related to his claims in this case, his claims are barred.

C.    <u>Defendant Hinkley is entitled to summary judgment on Plaintiff's claims that Hinkley violated his constitutional rights by denying him medical care.</u>

Plaintiff claims that Defendant Hinkley violated his constitutional rights by denying him access to medical care. If the court determines that these claims are not barred by the PLRA, the Defendant is entitled to summary judgment based on qualified immunity.

Government officials who are performing discretionary functions are entitled to qualified immunity if their conduct does not violate clearly established rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity inquiry is a two part test. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Maldonado v. Fontanes*,

568 F.3d 263, 268-69 (1st Cir. 2009). The first part of this inquiry considers whether the facts alleged show that the officer's conduct violated a constitutional right.[1] *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second part of this inquiry is whether that right was clearly established. *Id*. The First Circuit recognizes that the second step of this inquiry has two aspects. *Maldonado,* 568 F.3d at 269. Under one aspect "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202. The second aspect is "whether a reasonable official, situated similarly to the defendants, would have understood that the conduct at issue contravened the clearly established law." *Savard v. Rhode Island*, 338 F.3d 23, 27 (1st Cir. 2003) (citing *Saucier*, 533 U.S. at 202). This part of the inquiry involves evaluation of the facts of the case. *Id.*

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular . . . [action] is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

*Saucier*, 533 U.S. at 205. The qualified immunity standard is very broad and protects "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). In this case, Defendant Hinkley is entitled to qualified immunity because there was no constitutional violation and the right in question was not clearly established.

A denial of medical care claim requires evidence of deliberate indifference to a serious medical need of the inmate. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference means that "a prison official cannot be found liable under the Eighth Amendment for denying an

---

[1] While the sequence for analyzing qualified immunity, which was outlined in *Saucier* is not mandatory, it is still the preferred method of analysis. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference requires "actual knowledge of impending harm, easily preventable." *Desrosiers v. Moran*, 949 F.2d 15, 19 (1st Cir. 1991). This is a subjective test. *Farmer*, 511 U.S. at 837-839. "Even if prison officials know of a substantial risk to inmate health or safety but fail to prevent the harm, they 'may be found free from liability if they respond reasonably to the risk.'" *Giroux v. Somerset County*, 178 F.3d 28, 32 (1999) (citing *Farmer*, 511 U.S. at 844). When considering what constitutes a reasonable response the First Circuit has stated that "a reasonable response clearly defeats the claim of constitutional violation," and "[c]onceivably, a response that was colorable and taken in good faith might still be enough to negate deliberate indifference even if it were inadequate from an objective standpoint (and thus negligent) . . ." *Burrell v. Hampshire County*, 307 F.3d 1, 8 (1st Cir. 2002). "Non-medical defendants . . . can rely on the expertise of medical personnel. . . . [I]f a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011); *see also Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004).

      The Plaintiff cannot establish deliberate indifference. There is no evidence Defendant Hinkley was aware of or disregarded any risk associated with the medical care being provided by the jail's medical provider. There is no evidence he had the subjective knowledge to support a finding of deliberate indifference.

      Furthermore, throughout his stay at the Knox County Jail, Ruffin was seen by medical staff. In fact, on the first day when Ruffin arrived at the jail he was seen by a nurse who assessed

him. *DSMF ¶ 2*. The nurse was aware Ruffin had diabetes. *Id.* Approximately two weeks after arriving at the jail, Ruffin saw PA Cichon and "made all necessary complaints to him at that time." *DSMF ¶ 3*. Ruffin was seen by PA Cichon again on January 18, 2017, at which time PA Cichon referred Ruffin to a podiatrist. *DSMF ¶¶ 7, 8*. A few weeks later, Ruffin saw a podiatrist at Pen Bay Medical Center. *DSMF ¶ 9*. Ruffin saw PA Cichon a third time for a complaint about his knee after his foot had healed. *DSMF ¶ 11*.

Even if Ruffin is somehow able to establish that a constitutional violation may have occurred with regard to the provision of medical care under the circumstances of this case, that right was not clearly established. It was not clearly established that Ruffin was entitled to additional medical care above what he was offered under the circumstances. If the Defendant was mistaken as to the constitutionality of his actions with regard to providing Ruffin with medical care, the mistake was reasonable and a reasonable officer would not have believed that his actions were unlawful. For these reasons, the Defendant is entitled to summary judgment on Plaintiff's claim that he was denied medical care.

D. <u>Defendant Hinkley, in his official capacity, is entitled to summary judgment on Plaintiff's municipal liability claim.</u>

  1. Defendant Hinkley, in his official capacity, is entitled to summary judgment because there were no underlying constitutional violations.

Defendant Hinkley is not liable because there were no underlying constitutional violations. Where the Defendant officers "ha[ve] inflicted no constitutional harm, neither the municipality nor the supervisor can be held liable." *Wilson v. Town of Mendon*, 294 F.3d 1, 6 (1st Cir. 2002). In this case, the Defendant did not violate Ruffin's constitutional rights. *See* Section III(C) (discussing constitutionality of Hinkley's actions in the context of qualified immunity). For this reason, summary judgment should be granted in favor of Defendant Hinkley on the municipal liability

claim.

        2.       The policy, customs, and practices at issue in this case are constitutional.

In order to establish governmental entity liability, the Plaintiff must either demonstrate that the unconstitutional actions of an employee were taken pursuant to an official policy which itself was unconstitutional, or that those actions resulted from a pattern or practice of widespread and pervasive unconstitutional conduct of which those with final decision-making authority knew or should have known, and yet done nothing to end the practice. *See generally Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658, 690-91 (1978); *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir.1989). In this case, Knox County contracts with Quality Choice Correctional Healthcare to provide medical care to inmates. *DSMF ¶ 16*. The policies require nursing coverage during normal business hours with at least one health care staff member on call during non-business hours, thereby providing 24-hour coverage 7 days a week. *DSMF ¶ 15*. Decisions regarding diagnosis and the appropriateness of treatment are left to the medical provider. *DSMF ¶ 17*. There is no evidence that there were any unconstitutional customs or practices at Knox County at all, let alone such practices or customs that were so well settled and widespread that the final decision-maker, can be said to have had either actual or constructive knowledge of them. Ruffin was seen by medical providers and was taken out of the facility to see a podiatrist. As such, Knox County is entitled to summary judgment on this claim.

## IV.  CONCLUSION

For all of the foregoing reasons, Defendant Hinkley asks the Court to enter summary judgment in his favor pursuant to Fed.R.Civ.P. 56 on Plaintiff's Complaint.

Dated:  September 14, 2018                              /s/  Peter T. Marchesi
                                                                         Peter T. Marchesi, Esq.

                                                                         /s/  Cassandra S. Shaffer
                                                                         Cassandra S. Shaffer, Esq.

                                                                         Wheeler & Arey, P.A.
                                                                         Attorneys for Defendant Hinkley
                                                                         27 Temple Street
                                                                         Waterville, ME  04901

UNITED STATES DISTRICT COURT
District of Maine

| | |
|---|---|
| DANIEL RUFFIN,<br>    Plaintiff<br><br>v.<br><br>ALFRED CICHON, MICHAEL KNOWLTON, and JOHN HINKLEY,<br>    Defendants | )<br>)  Docket No. 2:17-cv-00152-NT<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CERTIFICATE OF SERVICE

  I, Peter T. Marchesi, hereby certify that:

-  Defendant Hinkley's Motion for Summary Judgment

has been served this day on Plaintiff by filing with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

    Wendell Large, Esq.  *wlarge@rwlb.com*
    James F. Martemuci, Esq.  *jmartemuci@gmh-law.com*
    Robert P. Hayes, Esq.  *rhayes@gmh-law.com*

  Copies of the above documents have been provided to the Plaintiff via United States Mail, postage prepaid, at the following address:

    Daniel Ruffin
    Maine State Prison
    807 Cushing Road
    Warren, ME  04864-4600


Dated:  September 24, 2018      /s/  Peter T. Marchesi
                Peter T. Marchesi, Esq.
                Wheeler & Arey, P.A.
                Attorneys for Defendant Hinkley
                27 Temple Street
                Waterville, ME  04901