UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DANIEL ONEIL RUFFIN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:17-cv-00152-LEW |
| | ) | |
| MICHAEL KNOWLTON, et al., | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION ON DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT**

In this action, Plaintiff alleges Defendants acted with deliberate indifference toward his serious medical needs. (Complaint at 5–6, ECF No. 1.)

The matter is before the Court on Defendants' Motions for Summary Judgment. (ECF Nos. 57, 59.) Following a review of the summary judgment record and after consideration of Defendants' arguments,[1] I recommend the Court grant Defendants' motions for summary judgment.

**PROCEDURAL BACKGROUND**

Plaintiff filed his complaint on April 26, 2017, asserting claims related to the medical care of his feet and a restricted diet. (ECF No. 1.) Plaintiff also filed an application to proceed in forma pauperis (ECF No. 2,) which application the Court granted on May 1, 2017. (ECF No. 4.) Because Plaintiff was "a prisoner seek[ing] redress from a governmental entity or officer or employee of a governmental entity," 28 U.S.C. §

---

[1] Plaintiff did not file oppositions to Defendants' motions.

1

1915A(a), and in accordance with the in forma pauperis statute, 28 U.S.C. § 1915(e)(2), I conducted a preliminary review of Plaintiff's complaint, and on May 25, 2017, I recommended the Court dismiss the claims related to Plaintiff's diet and access to the commissary. (Recommended Decision after Screening Complaint, ECF No. 9.) The Court adopted the recommendation in relevant part on June 8, 2017. (Order Affirming in Part Recommended Decision, ECF No. 11.)

On August 16, 2017, Plaintiff filed an Amended Complaint, adding a disability discrimination claim and another named defendant. (ECF No. 21.) On September 19, 2017, I reviewed Plaintiff's Amended Complaint and recommended that the Court dismiss the new defendant and the disability discrimination claim. (Recommended Decision on Amended Complaint, ECF No. 29.) The Court adopted the recommended decision on October 30, 2017. (ECF No. 33.)[2]

On August 7, 2018, the Court dismissed the claims against Defendant Cichon because Plaintiff failed to respond to discovery requests as ordered. (Recommended Decision on Motion to Dismiss, ECF No. 55; Order Affirming Recommended Decision, ECF No. 56.)

Defendant Hinkley filed a motion for summary judgment on September 14, 2018, (ECF No. 57,) along with a statement of material facts. (ECF No. 58, hereinafter DHSMF.) On September 21, 2018, Defendant Knowlton filed a motion for summary judgment, (ECF No. 59,) along with a statement of material facts. (ECF No. 60, hereinafter DKSMF.)

---

[2] The Court also granted Plaintiff's request to return to the original complaint. *Id.*

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Perry v. Roy*, 782 F.3d 73, 77 (1st Cir. 2015). If a court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of his claims, a trial-worthy controversy exists and summary judgment must be denied as to any supported claim. *Id.* ("The district court's role is limited to assessing whether there exists evidence such that a reasonable jury could return a verdict for the nonmoving party." (internal quotation marks omitted)). Unsupported claims are properly dismissed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

## SUMMARY JUDGMENT RECORD

When presented with a summary judgment motion, a court ordinarily considers only the facts included in the parties' statements of material facts, which statements must be supported by citations to evidence of record. Federal Rule of Civil Procedure 56(c) and District of Maine Local Rule 56(b) – (d) require the specific citation to record evidence.

In addition, Local Rule 56 establishes the manner by which parties must present their factual statements and the evidence on which the statements depend. A party's pro se status does not relieve the party of the obligation to comply with the court's procedural rules.[3] *Ruiz Rivera v. Riley*, 209 F.3d 24, 27 – 28 & n. 2 (1st Cir. 2000); *Marcello v. Maine*, 489 F. Supp. 2d 70, 77 (D. Me. 2007).

By rule, a party seeking summary judgment must file, in addition to its summary judgment motion, a supporting statement of material facts setting forth each fact in a separately numbered paragraph, with each factual statement followed by a citation to evidence of record that supports the factual statement. D. Me. Loc. R. 56(b). A party opposing a motion for summary judgment must file an opposing statement in which it admits, denies, or qualifies the moving party's statements by reference to each numbered paragraph, with citations to supporting evidence, and in which it may set forth additional facts, in separately numbered paragraphs, with citation to supporting evidence. D. Me. Loc. R. 56(c). If an additional statement is introduced by the non-moving party, the moving party must file a reply statement in which it admits, denies, or qualifies the non-moving party's additional statements by reference to each numbered paragraph, with citations to supporting evidence. D. Me. Loc. R. 56(d).

---

[3] "[T]he Court is required to maintain a strict neutrality between opposing parties and even though a more forgiving reading may be appropriate for a pro se party in the summary judgment context, it is also true that '[j]udges and magistrate judges who review these filings must be able to rely on procedural rules so as to avoid becoming the lawyer for the unrepresented [party] or devoting an excessive portion of their time to such cases.'" *United States v. Baxter*, 841 F. Supp. 2d 378, 383 (D. Me. 2012) (quoting *Clarke v. Blais*, 473 F. Supp. 2d 124, 129 (D. Me. 2007)).

"Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." D. Me. Loc. R. 56(f). Additionally, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment." *Id.* Finally, "[t]he court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." *Id.*

Nevertheless, the factual assertions contained in the verified pleadings and affidavits filed by a pro se litigant generally will be considered in the review of a summary judgment motion. That is, where a pro se litigant has failed to comply strictly with the summary judgment rules, this Court has considered the sworn assertions of record. *See Clarke v. Blais*, 473 F. Supp. 2d 124, 128 – 30 (D. Me. 2007) ("The First Circuit has not addressed this notice debate directly, but has said, in the summary judgment context, that unrepresented plaintiffs' opposing affidavits and opposition papers are to be read 'liberally.'") (citing *Posadas de Puerto Rico, Inc. v. Radin*, 856 F.2d 399, 401 (1st Cir. 1988), and *Mas Marques v. Digital Equip. Corp.*, 637 F.2d 24, 27 (1st Cir. 1980)); *Demmons v. Tritch*, 484 F. Supp. 2d 177, 182 – 83 (D. Me. 2007).

### FACTUAL BACKGROUND[4]

Plaintiff has a medical history that includes Type 2 diabetes, as well as high blood pressure, and osteoarthritis. (DKSMF ¶ 1.) Between May and November of 2016, prior

---

[4] The following facts are drawn primarily from Defendants' statements of material facts. Plaintiff did not file a response to the factual assertions contained in Defendants' statement. Accordingly, given the failure

5

to arriving at Knox County Jail, Plaintiff treated with Steven Wilson, M.D., at Belfast Family Medicine. (*Id.* ¶ 2.) Dr. Wilson did not recommend any treatment for Plaintiff's feet, other than recommending the use of insoles. (*Id.* ¶ 3.) Plaintiff disagreed with Dr. Wilson's insole recommendation and elected instead to use over-the-counter skin lotion. (*Id.* ¶ 4.)

Plaintiff was incarcerated at the Knox County Jail from November 17, 2016 until June of 2017. (DKSMF ¶ 5; DHSMF ¶ 1.) Upon his arrival at the jail, Plaintiff was assessed by a nurse, Sarni Blouin, R.N., who was aware of Plaintiff's medical history, including diabetes. (DKSMF ¶ 6; DHSMF ¶ 2.) Approximately two weeks after he was assessed by Nurse Blouin, Plaintiff was seen by Physician Assistant Al Cichon, at which time Plaintiff made all "necessary complaints" regarding his ongoing medical needs. (DKSMF ¶ 7; DHSMF ¶ 3.)

On December 16, 2016, Plaintiff, through an inmate medical request form, requested that a member of the jail medical staff examine his feet. (DKSMF ¶ 8.) In his request, he stated he was "[h]aving pain, cracking, and very bad flow of blood, circulation in my feet, especially the right foot. I need some triple antibiotic or A&D to put on it." (*Id.* ¶ 9.) None of Plaintiff's prior inmate medical request forms mentions his feet: on November 20, 2016, Plaintiff filed a medical request about pain in his right knee; on November 30, 2016, he expressed his dissatisfaction with his diabetic diet restrictions; on December 6, 2016, he filed a request complaining about processed meats; on December 8,

---

to respond, Plaintiff's ability to contest any of Defendants' factual assertions is limited to statements contained in his complaint, which Plaintiff signed under penalty of perjury.

2016, he filed another request indicating discomfort in his right knee; and on December 12, 2016, he filed a request complaining about the foods available for purchase at commissary. (*Id.* ¶ 10.)

On December 17, 2016, one day after Plaintiff's medical request, Defendant Knowlton charted "some dry/cracked skin" with no open lesions. (*Id.* ¶ 11.) Defendant Knowlton recommended that Plaintiff obtain and use over-the-counter lotion that was available at the commissary. (*Id.* ¶ 12.) Plaintiff followed the recommendation and obtained shea and cocoa butter lotion from the commissary. (DKSMF ¶ 13; DHSMF ¶ 6.) After Plaintiff obtained the lotion, Defendant Knowlton reviewed the ingredients on the product's label and confirmed that it would be appropriate to treat Plaintiff's feet. (DKSMF ¶ 14.)

Plaintiff characterizes the condition of his feet during some part of November and the early part of December as including an "open wound . . . from the cracking and splitting." (Complaint at 5, ECF No. 1; Ruffin Deposition at 83:23–84:13). Plaintiff maintains that Defendant Knowlton did not provide his preferred ointment during that period; instead, Plaintiff "manage[d] to heal [his] wound [himself]" by getting some Bacitracin ointment from another inmate in another pod. (Complaint at 5, ECF No. 1.)

On January 16, 2017, Plaintiff filed an inmate medical request form, stating: "I used nearly a whole jar of the cream two to three times every day, and my feet still haven't gotten any better. I would like to try something different." The request did not mention open lesions on his foot. (DKSMF ¶ 15; DHSMF ¶ 7.) On the following day, Nurse Blouin

7

referred Plaintiff to Knox County Jail's primary provider, PA Cichon. (DKSMF ¶ 16; DHSMF ¶ 7.)

Plaintiff was seen by PA Cichon on the day after the referral, January 18, 2017. (DKSMF ¶ 17; DHSMF ¶ 7.) PA Cichon's notes reflect that Plaintiff complained about his diabetic diet restrictions and dryness of his feet. (DKSMF ¶ 18.) PA Cichon observed that Plaintiff's feet "appear dry and without any deformity." He did not document any open lesions. (*Id.* ¶ 19.) Based on Plaintiff's statements, PA Cichon noted that Plaintiff "has been evaluated several times and had several treatment modalities . . . without success." (*Id.* ¶ 20.) PA Cichon referred Plaintiff to a podiatrist for consultation. (DKSMF ¶ 21; DHSMF ¶ 8.)

On March 2, 2017, Plaintiff saw podiatrist Ryan Payne, DPM, at Pen Bay Medical Center. (DKSMF ¶ 22; DHSMF ¶ 9.) Dr. Payne charted that Plaintiff's feet were without "blisters or drainage" and he saw "no lesions/ulcerations." (DKSMF ¶ 23.) Dr. Payne ordered a nail trimming for Plaintiff, and recommended use of Lamisil cream, an over-the-counter anti-fungal treatment, for Plaintiff's toenails. (DKSMF ¶ 24; DHSMF ¶ 10.) Dr. Payne also noted a "moccasin-type rash" on Plaintiff's feet, that might be tinea pedis (athlete's foot). (DKSMF ¶ 25.) Dr. Payne did not prescribe or recommend any A&D ointment, bacitracin ointment, or Eucerin cream. (*Id.* ¶¶ 26 – 29.) Plaintiff has not returned to a podiatrist since that time, and as of February 2018, remained free of any open lesions on his feet. (*Id.* ¶ 38.) Julie Kingsbury, FNP, MSN, an expert witness retained by Defendant Knowlton, opined that bacitracin or A&D ointment would not be appropriate

treatments for dry, cracking feet, nor open lesions or wounds, and that Defendant Knowlton met the requisite standard of care. (*Id.* ¶ 41 – 42.)

Defendant Hinkley has been the Jail Administrator at the Knox County Jail since September of 2004. (DHSMF ¶ 27.) As Jail Administrator, his job is to oversee the operation of the jail. (*Id.* ¶ 28.) Knox County Jail has a number of policies in place regarding medical care of inmates and the services of its medical provider, Quality Choice Correctional Healthcare. (*Id.* ¶¶ 12 – 17.) When Plaintiff made request of Defendant Hinkley on a medical matter, Defendant Hinkley would follow the plan established by medical personnel. (*Id.* ¶ 29.)

## DISCUSSION

### A. Exhaustion of Administrative Remedies

Defendant Hinkley argues that Plaintiff's medical claims are barred because Plaintiff failed to exhaust the available administrative remedies. Federal law requires a prisoner to exhaust the available administrative remedies before initiating a lawsuit based on 42 U.S.C. § 1983, or any other federal law. 42 U.S.C. § 1997e. Specifically, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA [Prison Litigation Reform Act] and that unexhausted claims cannot be brought in court.")

9

The Supreme Court has held that § 1997e(a) requires "proper exhaustion" of a prisoner's administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90 – 91. "Compliance with prison grievance procedures … is all that is required … to 'properly exhaust.'" *Jones*, 549 U.S. at 218. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

A defendant may raise the § 1997e exhaustion requirement as an affirmative defense. *Id.* at 216; *see also Ramos v. Patnaude*, 640 F.3d 485, 488 (1st Cir. 2011) ("The Supreme Court made it plain … that exhaustion under § 1997e(a) is not a jurisdictional condition, and has held it to be an affirmative defense." (citing *Jones,* 549 U.S. at 212)). Because failure to exhaust administrative remedies is an affirmative defense rather than a jurisdictional issue, initially, Defendants bear the burden of proof. *Jones*, 549 U.S. at 216. To satisfy that burden, Defendants must establish "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino v. Baca,* 747 F.3d 1162, 1172 (9th Cir.) (en banc), *cert. denied sub nom.*, *Scott v. Albino,* 135 S. Ct. 403 (2014). Thereafter, Plaintiff must present evidence that demonstrates "that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

Exhaustion is required even though the prisoner's suit seeks monetary damages that are not available through the prison's grievance process. *Booth v. Churner*, 532 U.S. 731,

734 – 35 (2001). Exhaustion is also required even though the claim raises constitutional claims, such as claims alleging excessive force by prison officials. *Woodford*, 548 U.S. at 91 n.2; *Porter*, 534 U.S. at 520. However, "[a] prisoner need not exhaust remedies if they are not 'available.'" *Ross v. Blake*, 136 S. Ct. 1850, 1855, 195 L. Ed. 2d 117 (2016). Thus, "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth*, 532 U.S. at 738). In *Ross*, the Supreme Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.*

"First, … an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* (citing *Booth*, 532 U.S. at 736, and providing as examples a situation in which a handbook tells prisoners to send a grievance to an officer who then "disclaims the capacity to consider the grievance," and a situation where "administrative officials have apparent authority, but decline ever to exercise it"). Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* In other words, a process that, viewed objectively, is too confusing to understand, is not an available process. *Id.* Third, an otherwise available grievance process is not available "when prison administrators

11

thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860. [5]

The summary judgment record establishes that Knox County Jail has a grievance process that provides for first-tier grievances to be made to jail supervisors, second-tier grievances are made to the highest-level jail administrators, and third-tier appeals to be filed with the Knox County Sheriff or the State Jail Inspector. DHSMF ¶¶ 18 – 24. Defendant Hinkley argues that Plaintiff only filed two third-tier grievances, both concerning other issues, not the medical care of his feet. DHSMF ¶ 25 – 26; (Defendant Hinkley's Motion at 3 – 4, ECF No. 57.)

With his complaint, Plaintiff attached a copy of a December 18, 2016, letter addressed to the State Jail Inspector. (ECF No. 1-1.) In the letter, Plaintiff discusses the cracking of the skin on his feet, which resulted in an "open womb [sic]," and describes his efforts to obtain his preferred ointment from Defendant Knowlton. *Id.* This letter appears to satisfy the third-tier appeal requirement of the Knox County Jail grievance process. Defendants did not discuss the letter in their motions or statements of facts. On this record, therefore, a factual issue exists as to whether Plaintiff exhausted the available administrative remedies.

---

[5] In *Ross*, the Supreme Court remanded the case for further proceedings where the record suggested that the commencement of an investigation into prisoner abuse by the prison's Internal Investigation Unit cut off any further processing of the prisoner's related prisoner grievance and foreclosed his access to any relief through that process. 136 S. Ct. at 1860 – 62.

## B. Deliberate Indifference Claim

The Eighth Amendment, which prohibits cruel and usual punishments, governs prisoners' medical needs after conviction, and the Due Process Clause of the Fourteenth Amendment imposes similar obligations while prisoners are in pre-trial custody. *See City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 243 (1983). The Constitution imposes on state actors the "substantive obligation" not to treat prisoners in their care in a manner that reflects "deliberate indifference" toward "a substantial risk of serious harm to health," *Coscia v. Town of Pembroke*, 659 F.3d 37, 39 (1st Cir. 2011), or "serious medical needs," *Feeney v. Corr. Med. Servs.*, 464 F.3d 158, 161 (1st Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 – 106 (1976)). To be actionable, a deliberate indifference claim must satisfy both an objective and a subjective standard. *Leavitt v. Corr. Med. Servs.*, 645 F.3d 484, 497 (1st Cir. 2011).

The objective standard evaluates the seriousness of the risk of harm to one's health. For a medical condition to be objectively "serious," there must be "a sufficiently substantial 'risk of serious damage to [the inmate's] future health.'" *Farmer v. Brennan*, 511 U.S. 825, 843 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). A medical need is serious if it has been diagnosed by a physician as mandating treatment, or is so obvious that even a lay person would recognize a need for medical intervention. *Leavitt*, 645 F.3d at 497; *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991).

The subjective standard concerns the culpability of the defendant. There must be evidence that a particular defendant possessed a culpable state of mind amounting to

13

"deliberate indifference to an inmate's health or safety." *Farmer*, 511 U.S. at 834 (internal quotation marks omitted). Deliberate indifference is akin to criminal recklessness, "requiring actual knowledge of impending harm, easily preventable." *Feeney*, 464 F.3d at 162 (quoting *Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993)). The focus of the deliberate indifference analysis "is on what the jailers knew and what they did in response." *Burrell v. Hampshire Cnty.*, 307 F.3d 1, 8 (1st Cir. 2002). In other words, the subjective standard focuses on whether the Defendants had a "purposeful intent" to neglect Plaintiff's serious medical needs. *Perry v. Roy*, 782 F.3d 73, 79 (1st Cir. 2015) (citing *Estelle,* 429 U.S. at 105). A showing of such an intent requires evidence that the alleged absence or inadequacy of treatment was intentional. *Id.* (citing *Estelle*, 429 U.S. at 105 (holding that "an inadvertent failure to provide adequate medical care" is not a constitutional violation), and *Watson,* 984 F.2d at 540 ("The courts have consistently refused ... to conclude that simple medical malpractice rises to the level of cruel and unusual punishment.")). "The typical example of a case of deliberative indifference would be one in which treatment is denied in order to punish the inmate." *Id.* (internal quotation marks omitted). However, a showing of "wanton disregard" will also raise a genuine issue for trial. *Id.* (quoting *Battista v. Clarke,* 645 F.3d 449, 453 (1st Cir. 2011)). Deliberate indifference thus must be based on much more than ordinary negligence. The First Circuit has explained:

> A finding of deliberate indifference requires more than a showing of negligence. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (holding that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Sires v. Berman*, 834 F.2d 9, 13 (1st Cir. 1987). A plaintiff claiming an eighth amendment violation with respect to an inmate's serious mental health or safety needs must allege "acts or omissions sufficiently harmful to evidence deliberate indifference." *Estelle*,

14

> 429 U.S. at 106; *see also Cortes-Quinone v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir.), *cert. denied*, 488 U.S. 823 (1988). Although this court has hesitated to find deliberate indifference to a serious need "[w]here the dispute concerns not the absence of help, but the choice of a certain course of treatment," *Sires*, 834 F.2d at 13, deliberate indifference may be found where the attention received is "so clearly inadequate as to amount to a refusal to provide essential care."

*Torraco v. Maloney*, 923 F.2d 231, 234 (1st Cir. 1991).

Under the objective standard, even construing the evidence in the light most favorable to him, Plaintiff has failed to produce evidence that would permit a reasonable factfinder to conclude that his medical needs were sufficiently serious to support a deliberate indifference claim. In fact, known cases involving foot care militate against such a finding. *See e.g., Cusamano v. Carlsen*, No. 9:08-CV-755 FJS/GHL, 2011 WL 7629512, at *12 (N.D.N.Y. Dec. 16, 2011), report and recommendation adopted, No. 9:08-CV-755 FJS/TWD, 2012 WL 1036854 (N.D.N.Y. Mar. 27, 2012). While Plaintiff's diabetic condition could potentially lead to more serious foot-related medical issues, *see e.g. Belskis v. Somerset Cty.*, No. 1:15-CV-00091-JAW, 2017 WL 4381675, at *18 (D. Me. Sept. 29, 2017), the record in this case does not satisfy the objective prong of the deliberate indifference inquiry. The unrebutted expert medical testimony is that Plaintiff's foot symptoms did not require additional foot medication, and the treatment he requested would not have been effective.

Even if Plaintiff could satisfy the objective standard, his claim would fail under the subjective standard. No reasonable factfinder could conclude that Defendant Knowlton's treatment of Plaintiff was "so clearly inadequate as to amount to a refusal to provide essential care." *Layne v. Vinzant*, 657 F.2d 468, 474 (1st Cir. 1981) (quoting *Thomas v.*

15

*Pate*, 493 F.2d 151, 158 (7th Cir.), vacated sub nom. *Cannon v. Thomas*, 419 U.S. 813 (1974)).

The evidence demonstrates that Plaintiff received prompt medical attention when he requested it. "[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments." *Miranda v. Munoz*, 770 F.2d 255, 259 (1st Cir. 1985) (quotations and modifications omitted). In addition, the undisputed expert medical evidence establishes that the cream from the commissary was an acceptable method of treatment. The record lacks any evidence to suggest that Defendant Knowlton's recommended course of treatment (i.e., lotion from the commissary and time) was insufficient to address Plaintiff's dry and cracking skin. Furthermore, for the symptoms that did persist, Defendant Knowlton referred Plaintiff to PA Cichon, after which Plaintiff saw a specialist. The referral further rebuts any inference of indifference by Plaintiff's medical providers.

In sum, where, as here, "there is no evidence of treatment 'so inadequate as to shock the conscience, let alone that any deficiency was intentional,' or evidence of acts or omissions 'so dangerous (in respect to health or safety) that a defendant's knowledge of a large risk can be inferred,' summary judgment is appropriate." *Torraco v. Maloney*, 923 F.2d 231, 234 (1st Cir. 1991) (internal citations omitted).

As to Defendant Hinkley, because the underlying care by the medical provider was constitutionally sufficient, Plaintiff cannot succeed on his claim against the Jail Administrator based on oversight or management of the Knox County Jail medical facilities and providers. *See Guadalupe-Baez v. Pesquera*, 819 F.3d 509, 514 (1st Cir.

2016) (describing the first element of such a claim as "one of the supervisor's subordinates abridged the plaintiff's constitutional rights").

## CONCLUSION

Based on the foregoing analysis, I recommend the Court grant Defendant Hinkley's Motion for Summary Judgment, (ECF No. 57), and Defendant Knowlton's Motion for Summary Judgment. (ECF No. 59.)

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 15th day of January, 2019.